HERMAN LAW
5200 Town Center Circle, Suite 540
Boca Raton, Florida 33486
Jeff Herman
(pending *pro hac vice admission*)
Daniel Ellis
California Bar No. 298639
dellis@hermanlaw.com
Arick Fudali
California Bar No. 296364
afudali@hermanlaw.com
Tel: (305) 931-2200
Fax: (305) 931-0877

*Attorneys for Plaintiff, Dominique Huett*

FILED
Superior Court of California
County of Los Angeles

JAN 3 1 2018

Sherri R. Carter, Executive Officer/Clerk
By _____ Deputy
Raul Sanchez

## SUPERIOR COURT OF THE STATE OF CALIFORNIA
## FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| DOMINIQUE HUETT, | CASE NO: BC680869 |
| Plaintiff, | First AMENDED CIVIL COMPLAINT ALLEGING DAMAGES FOR NEGLIGENCE, VIOLATIONS OF 18 U.S.C. §1591, AND AIDING AND ABETTING 17-9201 |
| vs. | |
| THE WEINSTEIN COMPANY LLC, BOB WEINSTEIN and HARVEY WEINSTEIN, | |
| Defendants. | **DEMAND FOR JURY TRIAL** |

**By Fax**

## PARTIES AND JURISDICTION

1.      Plaintiff Dominique Huett is a citizen and resident of New York.

2.      Defendant The Weinstein Company LLC (hereinafter referred to as "TWC") is a Delaware limited liability company whose principle place of business is in New York, New York.

3.      Defendant Harvey Weinstein is a citizen and resident of New York, New York.

4.      Defendant Bob Weinstein is a citizen and resident of New York, New York. He is the co-founder and Chairman of TWC.  Upon information and belief, Bob Weinstein owns 42% of the equity in TWC.

5.      All of the Defendants have purposely availed themselves of the benefits of doing business and engaging in transactions in this forum.  The causes of action set forth herein have a substantial connection to the Defendants' activities in this forum.

6.      Venue properly lies in this county in that the Defendants regularly conduct business in this county, and the torts described herein were committed in this county. This Court has jurisdiction in that this is a claim for damages of not less than $5 million, well in excess of the jurisdictional minimum of $25,000.

7.      The controversy in this case arises out of the Defendants' contacts with this forum.

## FACTUAL ALLEGATIONS

8.      Harvey Weinstein is a renowned film producer who travels abroad and to different states in the United States where he acts as agent for Defendant TWC.  In this capacity, he recruits, solicits and entices female actors with promises of access to and participation in financially beneficial entertainment projects.  This was a common practice of Harvey Weinstein, well known to Bob Weinstein and TWC.

9.      TWC and Bob Weinstein were aware that Harvey Weinstein engaged in such conduct in the course of his work as a film producer and entertainment mogul for TWC.  Bob Weinstein and TWC benefitted financially from Harvey Weinstein's business-related activities which supported Harvey Weinstein's course of conduct.

10.     Harvey Weinstein, TWC and Bob Weinstein knew, or recklessly disregarded the fact that, Harvey Weinstein used means of force, fraud or coercion to cause young female actors to whom he had promised access to and participation in entertainment projects to engage in sex acts.

11.     In or about November 2010, Plaintiff Dominique Huett and Harvey Weinstein arranged to meet each other at The Peninsula Beverly Hills hotel in Beverly Hills, California. Plaintiff was an aspiring actress at the time and the purpose of the meeting was to discuss Harvey Weinstein's offer to assist Plaintiff in procuring future television and/or film roles or projects. Harvey Weinstein had provided Plaintiff with introduction and access to TWC executives and agents, who would purportedly provide her with acting or modeling roles or participation in entertainment projects.  Harvey Weinstein, as agent for TWC, was thereby the "gatekeeper" for potentially lucrative and career-making opportunities for Plaintiff.

12.     Plaintiff and Weinstein initially met at the bar of The Peninsula hotel, where they discussed Weinstein's interest in assisting Plaintiff with her acting career.  During their conversation, Plaintiff noticed Weinstein staring at her breasts. Weinstein asked Plaintiff if she had ever had a "boob job" and asked her to show him her breasts. Plaintiff refused and was made uncomfortable by the question and the request. However, Weinstein informed Plaintiff that the purpose of the questioning was that it would be beneficial for securing future roles if she did not have breast augmentation.

13.     At some point during their conversation, Weinstein, who was at the time living at the hotel, invited Plaintiff to his room under the guise of continuing their business meeting. Plaintiff agreed to move the meeting to his hotel room, believing they were to continue their discussion regarding her career.

14. While in Weinstein's room, the two continued their conversation regarding Plaintiff's career. At some point, Weinstein excused himself to use the restroom. After several minutes, Weinstein returned from the restroom wearing only a bathrobe.

15. Upon returning, Weinstein asked Plaintiff to perform a massage on him. Plaintiff said, "No," and that she did not feel comfortable by his request. However, Weinstein persisted and would not take "no" for an answer. Weinstein laid on the bed and demanded that Plaintiff perform a massage on him. Plaintiff ultimately complied with his demands and performed the massage.

16. Subsequently, Weinstein requested to perform oral sex on Plaintiff. Plaintiff was shocked and alarmed by the request and initially refused. Again, Weinstein displayed persistence and would not take "no" for an answer. Weinstein initiated and Plaintiff froze as Weinstein removed her clothing and performed oral sex on her. Weinstein performed oral sex on Plaintiff for several minutes. After performing oral sex on Plaintiff, Weinstein masturbated in front of Plaintiff until he reached orgasm.

17. At some point during their communications, Weinstein gave Plaintiff the contact information for an executive producer with *Project Runway*, a television program produced by Defendant, and offered to secure a role for Plaintiff on the program.

18. Prior to the incident involving Plaintiff, Defendant TWC's executives, officers and employees, including Defendant Bob Weinstein, had actual knowledge of Harvey Weinstein's repeated acts of sexual misconduct with women. In particular, they were aware of Harvey Weinstein's pattern of using his power to coerce and force young actresses to engage in sexual acts with him. This knowledge was possessed by Defendant's Board of Directors including, upon information and belief, Bob Weinstein.

19.     Upon information and belief, Defendant TWC was aware of allegations of sexual misconduct against Harvey Weinstein going back to the 1990s. Upon information and belief, prior to the incident involving Plaintiff, Defendant TWC was aware of multiple claims of sexual misconduct which were settled with the victims prior to the filing of suit. This knowledge was possessed by Defendant's Board of Directors including, upon information and belief, Bob Weinstein.

20.     Prior to the incident involving Plaintiff, Defendant TWC often aided and abetted Weinstein in the commission of his sexual misconduct. For example, female Weinstein Company employees were often used as "honeypots" to lure his victims into a false sense of security. The "honeypots" would initially join a meeting along with a woman Weinstein was interested in, but then Weinstein would dismiss them, leaving him alone with the woman.

21.     Plaintiff did not discover, and a reasonable and diligent investigation would not have disclosed, that prior to her incident Defendant TWC was aware of numerous allegations of sexual misconduct involving Weinstein. Upon information and belief, the allegations of sexual misconduct involving Weinstein that Defendant was aware of were subject to nondisclosure agreements and/or confidential settlements, and were otherwise only known inside TWC. Upon information and belief, the nondisclosure agreements and/or confidential settlements legally prohibited Defendant TWC, Weinstein, and the victims of the sexual misconduct from discussing the allegations and Defendant's knowledge thereof. As such, even if Plaintiff had conducted a timely and reasonable investigation, she could not have discovered Defendant TWC's prior knowledge of Weinstein's sexual misconduct. Plaintiff was unable to discover Defendant's knowledge of Weinstein's propensity to engage in sexual misconduct until the story of Weinstein's pattern of sexual misconduct with young actresses broke in October, 2017.

22.   As a direct and proximate result of the foregoing, Plaintiff has suffered injuries and emotional distress, pain and suffering, mental anguish, inconvenience, loss of capacity for the enjoyment of life, inability to lead a normal life, shame and humiliation.  Alternatively or in addition, Plaintiff sustained an aggravation of an existing condition or activation of a latent condition and resulting damages.  The injuries and damages are permanent and continuing in nature.

## COUNT I
### (Negligence Against Defendant TWC)

23.   Plaintiff repeats and realleges the allegations in paragraphs 1 through 22 above.

24.   TWC was in the special relationship with Harvey Weinstein of employer-employee.  In the course of this special relationship, TWC had a duty to control Harvey Weinstein's conduct to prevent foreseeable harms.

25.   TWC was also in a special relationship with Plaintiff, who was in a particular class or group of persons, aspiring actresses/models, whom TWC knew or should have known would be recruited, enticed or solicited by Harvey Weinstein in circumstances reflecting a substantial imbalance of power.  TWC thus had a duty to Plaintiff which provided her with a right to protection from TWC.

26.   Alternatively, TWC owed a duty to Plaintiff by virtue of its contacts and communications with Plaintiff, affirming Harvey Weinstein's role as gatekeeper for Plaintiff's career opportunities. These contacts and communications thus created the peril, and contributed to or increased the risk that Harvey Weinstein would use force, fraud or coercion to engage in sex acts with Plaintiff.  TWC placed Plaintiff in a situation which exposed Plaintiff to an unreasonable risk of harm through the reasonably foreseeable acts and conduct of Harvey Weinstein.

27.     At all relevant times, Defendant TWC owed a duty to use reasonable care in the retention and supervision of its employee or agent, Harvey Weinstein.

28.     TWC had a duty to control Harvey Weinstein in his interactions with aspiring actress/models during meetings taking place within the course and scope of his employment in order to prevent foreseeable harm.

29.     Prior to the sexual misconduct with Plaintiff, Defendant knew or had reason to know that Harvey Weinstein was likely to engage in sexual misconduct with women he came into contact with during the course and scope of his employment. In particular, upon information and belief, Defendant knew or should have known that Harvey Weinstein would lure young aspiring actresses into compromising situations under the guise of business meetings. Prior to the incident involving Plaintiff, Defendant TWC's Board of Directors possessed knowledge of Harvey Weinstein's propensity to engage in sexual misconduct. Knowledge of Harvey Weinstein's propensity to engage in sexual misconduct was additionally possessed by Defendant TWC's executives, officers and employees. At all relevant times Defendant TWC's Board of Directors supervised Harvey Weinstein and TWC was in a principal-agent relationship with Harvey Weinstein.

30.     By possessing knowledge of Harvey Weinstein's prior sexual misconduct, Defendant TWC knew or should have known that Harvey Weinstein was unfit and that this unfitness created a particular risk to others.

31.     Defendant TWC failed to exercise reasonable care in retaining Harvey Weinstein, or failing to engage in responsive and corrective measures to prevent foreseeable harms, and instead continued to condone, enable and facilitate Harvey Weinstein him in

meetings with prospective female actors one-on-one with the knowledge that there was a substantial likelihood for sexual misconduct.

32.    Harvey Weinstein's meeting with Plaintiff at the Peninsula hotel occurred within the course and scope of his employment. The contact between Plaintiff and Weinstein was generated by the agency relationship between Defendant TWC and Harvey Weinstein.

33.    Defendant TWC failed to exercise reasonable care to protect Jane Doe as an aspiring actress/model whom TWC knew of should have known would be targeted by Harvey Weinstein for his sexual gratification.

34.    Defendant TWC's negligence in supervising and/or retaining, and otherwise failing to take steps to control, Harvey Weinstein was a substantial factor in causing Plaintiff's harm.

35.    Defendant TWC's negligence in failing to protect Plaintiff as an aspiring actress/model exposed to Harvey Weinstein's advances was a substantial factor causing Plaintiff's harm.

36.    It was foreseeable that Harvey Weinstein would engage in sexual misconduct if Defendant TWC continued to enable, condone and facilitate Harvey Weinstein in his private one-on-one business meetings with female actors.  At all relevant times, Defendant TWC knew Harvey Weinstein was using his power and position with TWC to coerce women into engaging in sexual contact, and knew that this sexual misconduct would cause harm.

37.    Defendant TWC failed to institute corrective measures to protect female actors/models who came into contact with Harvey Weinstein for business purposes, including Plaintiff, from sexual misconduct, despite the Board of Directors possessing actual notice of Harvey Weinstein's sexually inappropriate behavior. Such acts and omissions demonstrate a

conscious disregard for the safety of others. The TWC Board of Directors was aware of the probable dangerous consequences of failing to remove, or adequately supervise or control, Harvey Weinstein. In failing to do so, Defendant TWC acted with actual malice and with conscious disregard to Plaintiff's safety.

38.     As a direct and proximate result of Defendant TWC's negligence, Plaintiff was a victim of Harvey Weinstein's sexual misconduct. The sexual misconduct has caused Plaintiff to suffer continuing, severe and permanent psychological and emotional issues, and the loss of enjoyment of life.

## COUNT II
### (Violation of 18 U.S.C. §1591 Against Harvey Weinstein)

39.     Plaintiff repeats and realleges the allegations in paragraphs 1 through 22 above.

40.     Harvey Weinstein, as he had done on many occasions, engaged in interstate travel for TWC business, and engaged in electronic communications in interstate commerce to arrange a meeting with Plaintiff, where he promised her participation and a role in an entertainment project.

41.     Harvey Weinstein met with Plaintiff in Los Angeles, brought her up to his hotel room, and assured her that he would provide her participation and a role in an entertainment project.

42.     Harvey Weinstein knew that he would use fraud, physical force or coercion (as he had done many times before to many other young aspiring actresses) on Plaintiff for a sexual encounter.  He offered her a television role, and demanded sexual contact despite the fact that Plaintiff said "no".

43.   Harvey Weinstein was well aware that a role in one of TWC's projects, or the exercise of his influence on her behalf in the entertainment business, was of significant commercial value to Plaintiff, and Harvey Weinstein used such promise regarding a television project and the prospective use of his influence on her behalf, to recruit and entice Plaintiff to his hotel room where he intended to coerce sex acts.

44.   Harvey Weinstein's offer of a role in a television program, and the offer to use his influence on her behalf, was successful in enticing and maintaining Plaintiff in his hotel room. Plaintiff felt compelled to comply with Harvey Weinstein's acts toward her because of the benefits she would receive from his power and influence, including without limitation, a role on *Project Runway*. Harvey Weinstein then coerced Plaintiff into a sexual act. This was a typical practice of Harvey Weinstein, as it was common for him to lure young females into his room with the promise of an attractive role or entertainment project, and then coerce them into a sexual encounter. Harvey Weinstein knew that the promise of a role or the use of his influence on her behalf would entice Plaintiff, and knew that he was in a position to coerce the sexual activity he desired.

45.   Harvey Weinstein was able to coerce Plaintiff into sexual activity in his hotel room because of his promise to her of a television role and use of his influence on her behalf.

46.   Harvey Weinstein in this case used the ploy of a television role as a fraudulent means of obtaining sexual gratification from Plaintiff.

## COUNT III
### (Participating in a Venture in Violation of 18 U.S.C. §1591 Against TWC)

47.   Plaintiff repeats and realleges the allegations in paragraphs 1 through 22 above.

48.   TWC knowingly participated in Harvey Weinstein's venture in violation of 18 U.S.C. §1591 by benefiting from, and knowingly facilitating, the venture in which Harvey

Weinstein traveled in interstate commerce, and used the means of interstate commerce, to recruit or entice female actors into forced or coerced sexual encounters on the promise of attractive roles in entertainment projects.

49. TWC knew, or was in reckless disregard of the facts, that it was the practice of Harvey Weinstein to travel in interstate commerce or use the means of interstate commerce to entice or recruit female actors into defrauded, forced or coerced sexual acts based on the promise of participation in upcoming entertainment projects or the use of his influence in their favor.

50. TWC had been privy to multiple claims in which such acts were alleged against Harvey Weinstein, prior to November, 2010.

51. Despite such knowledge, TWC continued to finance and facilitate these activities of Harvey Weinstein he engaged in during the course of his agency for TWC. Further, TWC executives and employees knowingly aided the commercial sex acts by engaging in contacts and communications with the female actors recruited by Harvey Weinstein purportedly in support of their careers.

52. Upon information and belief, the code word among TWC employees "FOH", meant "Friend of Harvey", and referred to a young woman who had participated in sex in exchange for a role or position in an upcoming project. TWC employees knew to "take care" of the FOH's.

53. TWC, and its executives and employees, benefitted from the venture. Upon information and belief, in exchange for facilitating and covering up Harvey Weinstein's commercial sex acts, the TWC executives and employees progressed in their careers at TWC and received financial benefits.

54.     Upon information and belief, participating and covering up Harvey Weinstein's scheme was a means of obtaining success and growth within the hierarchy at WTC.  In other words, those who participated in the scheme received better assignments and compensation.

55.     TWC knowingly benefitted financially from the commercial sex act venture of Harvey Weinstein, including the profits from the projects Harvey Weinstein produced or promoted.  By facilitating Harvey Weinstein's commercial sex acts in interstate commerce, TWC enjoyed the promotion and promulgation of TWC projects.

<u>COUNT IV</u>
**(Participating in a Venture in Violation of 18 U.S.C. §1591 Against Bob Weinstein)**

56.     Plaintiff repeats and realleges the allegations in paragraphs 1 through 22 above.

57.     Bob Weinstein knowingly participated in Harvey Weinstein's venture in violation of 18 U.S.C. §1591 by benefiting from, and knowingly facilitating, the venture in which Harvey Weinstein travelled in interstate commerce, and used the means of interstate commerce, to recruit or entice female actors, knowing that he would use fraud, force or coercion for sex with these female actors.

58.     Upon information and belief, by facilitating Harvey Weinstein's commercial sex acts in interstate commerce, Bob Weinstein enjoyed the promotion and promulgation of TWC projects.  Harvey Weinstein was the face of TWC and his presence and promotion in interstate commerce brought exposure and prestige to TWC projects.  Bob Weinstein facilitated commercial sex acts in interstate commerce by Harvey Weinstein to obtain the financial benefits provided by Harvey Weinstein to his business interests, including his substantial interest in TWC.

59.     Bob Weinstein knew, or was in reckless disregard of the facts, that it was the pattern and practice of Harvey Weinstein to travel in interstate commerce to entice or recruit solicit female actors with the promise of roles in TWC projects or use of his influence on their behalf, knowing that he would then use fraud, force or coercion to engage in sex acts with these actors.

60.     Bob Weinstein has been privy to multiple claims in which such acts and conduct were alleged against Harvey Weinstein, prior to February, 2010.

61.     Despite such knowledge, Bob Weinstein, as an executive of TWC, continued to support the business activities of Harvey Weinstein.

62.     Bob Weinstein knowingly benefitted financially from the venture of Harvey Weinstein in which he used fraud, force or coercion to cause female actresses to engage in commercial sex acts involving the promise of roles or entertainment projects.

## COUNT V
### (Aiding and Abetting Violation of 18 U.S.C. §1591 Against Defendant TWC)

63.     Plaintiff repeats and realleges the allegations in paragraphs 1 through 22, 40 through 46, and 48 through 55 above.

64.     Defendant TWC aided and abetted Harvey Weinstein's commercial sex acts with Plaintiff.

65.     Defendant TWC willfully caused Harvey Weinstein's commission of the sex acts with Plaintiff in its affirmative acts supporting Harvey Weinstein, including its executives and agents' contacts and communications with Plaintiff.  These communications enticed and induced Plaintiff through the promise of roles or participation in entertainment projects.

66.     Defendant TWC knew that its acts and conduct supporting Harvey Weinstein would lead to commercial sex acts by Harvey Weinstein.

67.     Defendant TWC's aiding and abetting of Harvey Weinstein through its affirmative acts did in fact aid and abet Harvey Weinstein in committing commercial sex acts upon Plaintiff.

## COUNT VI
**(Aiding and Abetting Violation of 18 U.S.C. §1591 Against Defendant Bob Weinstein)**

68.     Plaintiff repeats and realleges the allegations in paragraphs 1 through 22, 40 through 46 and 57 through 62 above.

69.     Defendant Bob Weinstein aided and abetted Harvey Weinstein's commercial sex acts with Plaintiff.

70.     Defendant Bob Weinstein willfully caused Harvey Weinstein's commission of the sex acts with Plaintiff in supporting Harvey Weinstein's pursuit of their joint business interests, knowing that he would use his power and position to recruit or entice aspiring female actors with promises to advance their careers, and then force or coerce them into sex acts.

71.     Defendant Bob Weinstein knew that his acts and conduct supporting Harvey Weinstein would lead to commercial sex acts by Harvey Weinstein.

72.     Defendant Bob Weinstein's aiding and abetting of Harvey Weinstein through his affirmative acts did in fact aid and abet Harvey Weinstein in committing commercial sex acts upon Plaintiff.

## PRAYER FOR RELIEF

73.     General damages in an amount to be shown according to proof at the time of trial.

74.     Special damages including medical and psychological care expenses in an amount to be shown according to proof at the time of trial.

75.     All damages available under 18 U.S.C. §1595, including reasonable attorney's fees.

76.     Punitive and exemplary damages in an amount appropriate to punish or set an example of Defendant.

77.     Costs of suit.

78.     Such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial in this action.

Dated:   January 30, 2018

                                                    HERMAN LAW

                                    By:     _____
                                                    Daniel Ellis
                                                    California Bar No.  298639
                                                    dellis@hermanlaw.com
                                                    Arick Fudali
                                                    California Bar No. 296364
                                                    afudali@hermanlaw.com
                                                    Jeff Herman
                                                    (pending *pro hac vice* admission)
                                                    *Attorneys for Plaintiff*

AMENDED CIVIL COMPLAINT

**PROOF OF SERVICE**

**STATE OF FLORIDA, COUNTY OF PALM BEACH**

I am employed in the County of Palm Beach, State of Florida, I am over the age of 18 and not a party to the within action, my business address is 5200 Town Center Cir. #540, Boca Raton, FL 33486.

On January 30, 2018, I served the foregoing document described as Amended Civil Complaint Alleging Damages for Negligence, Violations of 18 U.S.C. §1591 and Aiding and Abetting on the following parties of this action:

SEYFARTH SHAW LLP
Gerald L. Maatman, Jr. (pro hac vice pending)
233 South Wacker Drive, Suite 8000
Chicago, IL 60606-6448
Tel: (312) 460-5000; Fax: (312) 460-7000
gmaatman@seyfarth.com

Laura Wilson Shelby (SBN 1518970)
Myra B. Villamor (SBN 232912)
2019 Century Park East, Suite 3500
Los Angeles, CA 90067-3021
Tel: (310) 277-7200; Fax: (310) 201-5219
lshelby@seyfarth.com
mvillamor@seyfarth.com

*Counsel for The Weinstein Company, LLC*

[ **X** ]  **BY MAIL:** I caused true and correct copies of the above documents to be placed and sealed in an envelope addressed to the addressee(s) with postage thereon fully prepaid, and I further caused said envelope(s) to be placed in the United States mail, in the City and County of Boca Raton, Palm Beach County.

[   ]  BY PERSONAL SERVICE: I caused true and correct copies of the above documents to be placed and sealed in an envelope (or envelopes) addressed to the addressee(s) and I caused such envelope(s) to be delivered by hand on the office(s) of the addressee(s).

[ **X** ]  **BY FACSIMILE:** I caused a copy (or copies) of such document(s) to be sent via facsimile transmission from (305) 931-0877 to the office(s) of the address(s).

[   ]  BY E-MAIL OR ELECTRONIC TRANSMISSION: With agreement of defense counsel that service by email instead of personal delivery constitutes proper service today, I caused a copy (or copies) of such document(s) to be sent via email to the addressee(s).

I declare under penalty of perjury under the laws of the State of Florida that the foregoing is true and correct and that this declaration was executed on January 30, 2018, at Boca Raton, Florida.

Daniel C. Ellis, Esq.

– 16 –.
AMENDED CIVIL COMPLAINT