Daniel G. Ellis [SBN 298639]
Jeffrey M. Herman (*subject to application and admission pro hac vice*)
Herman Law
5200 Town Center Cir. Suite 540
Boca Raton, FL  33486
Telephone: (305) 931-2200
Facsimile: (305) 931-0877
dellis@hermanlaw.com

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOMINIQUE HUETT,<br><br>                    Plaintiff,<br><br>        v.<br><br>THE WEINSTEIN COMPANY LLC; BOB WEINSTEIN and HARVEY WEINSTEIN,<br><br>                    Defendants. | CASE NO.:  2:18-cv-6012 SVW (MRW)<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES  IN OPPOSITION TO HARVEY WEINSTEIN'S MOTION TO DISMIS**<br><br><br>**Hearing Date: October 15, 2018**<br>**Time:  1:30 p.m.**<br>**Courtroom:  10A** |

Plaintiff, Dominique Huett, by and through undersigned counsel, respectfully submits this Memorandum of Points and Authorities in Opposition to the Motion to Dismiss of Defendant Harvey Weinstein Pursuant to Fed.R.Civ.P. 12(b)(6).

## Introduction

Plaintiff's Amended Complaint alleges a claim for violation of 18 U.S.C. § 1591(a), for which a civil remedy is provided under 18 U.S.C. § 1595(a).  Defendant Harvey Weinstein moves to dismiss for failure to state a claim, contending that § 1591(a) was not intended to encompass the acts alleged against him. The analysis first and foremost requires application of

1

the plain meaning of the statutory language.  The terms of § 1591(a) are plain and unambiguous. Applying the plain meaning of the statute to the facts alleged in the Amended Complaint demonstrates that Plaintiff states a plausible claim for relief.  In particular, the Amended Complaint alleges that Harvey Weinstein arranged a meeting with Plaintiff at the Peninsula Hotel in Los Angeles, the purpose of which was to provide her with roles that would substantially advance her entertainment industry career.   This meeting commenced at the hotel bar, but then Harvey Weinstein moved the meeting to his hotel room.  There he demanded sexual contact from Plaintiff, to which she initially resisted; but Harvey Weinstein had offered to secure for her a role in the television series *Project Runway* and to use his considerable influence on her behalf, which Plaintiff would have sacrificed by her continued noncompliance.  He ultimately removed Plaintiff's clothing and performed oral sex on her.  His acts and conduct in this incident were part of a continuing pattern and scheme in which Harvey Weinstein enticed aspiring female actors into private, one-on-one encounters, and then used means of force, fraud or coercion against them to engage in sex acts.  He would, as a *quid pro quo*, offer attractive roles in entertainment projects, as he did with Plaintiff, in the course of this nefarious scheme.  Indeed, Harvey Weinstein has become notorious for this criminal pattern of behavior, as numerous claims have been made against him for sexual misconduct with aspiring female actors in particular. The facts alleged in the Amended Complaint pertinent to this pattern and its application in his encounter with Plaintiff satisfy the plain meaning of the elements of a violation of §1591(a) set forth in the statutory language.

The Court need not analyze the claim in this case from a blank slate.  A motion to dismiss a civil claim for violation of 18 U.S.C. § 1591(a), alleging substantially the same facts  against Harvey Weinstein, was recently addressed by Judge Sweet of the U.S. District Court for the Southern District of New York in *Noble v. Weinstein*, case no. 17 Civ. 9260 (RWS), 2018 U.S.

Dist. LEXIS 137235 (S.D.N.Y. Aug. 13, 2018).  Judge Sweet engaged in a detailed analysis applying the statutory language to the alleged facts against Harvey Weinstein, and held that the plaintiff had alleged a plausible claim for relief.  The same analysis and result is appropriate here.  Plaintiff therefore respectfully requests that Harvey Weinstein's Motion to Dismiss be denied.

### Allegations of the Complaint

Plaintiff Dominique Huett alleges that Defendant Harvey Weinstein performed oral sex on her in his Los Angeles hotel room, and then masturbated in Plaintiff's presence until he reached orgasm.  (Amended Complaint ("AC") ¶ 16). These sexual acts were the product of a plan and scheme orchestrated by Harvey Weinstein to recruit or entice aspiring female actors like Plaintiff with promises of access to and participation in financially beneficial entertainment projects.  (*Id.*, ¶ 8).  Harvey Weinstein then used force, fraud or coercion to obtain sexual acts from the aspiring actresses he caught in this scheme.  (*Id.*, ¶ 18).   This scheme was a product of Harvey Weinstein's power and authority as a successful film producer and entertainment mogul. (*Id.*, ¶ 9).  It included his promises of substantial, career-changing roles to obtain sex acts from aspiring female actors since the 1990's.  (*Id.*, ¶ 19).  He used the employees of The Weinstein Company to lure women into this scheme.[1]  (*Id.*, ¶ 20).

Plaintiff was an aspiring actress, who was meeting with Harvey Weinstein in November, 2010 to discuss his offer to assist her in procuring television or film roles.  (*Id.*, ¶ 11).   Harvey Weinstein had provided Plaintiff with introduction and access to executives and agents of The Weinstein Company, and was to her the "gatekeeper" of potentially lucrative and career-making

---

[1]  Subsequent to Plaintiff's filing of the Amended Complaint, substantial additional facts came to light concerning the details of Harvey Weinstein's plan and scheme to obtain sex acts from aspiring actresses, which were set forth in the Complaint filed by the Office of New York Attorney General against Harvey Weinstein, The Weinstein Company and others, pursuant to its investigation into Harvey Weinstein's acts and conduct.   *See People of the State of New York v. The Weinstein Company LLC, et al.*, Verified Petition, Supreme Court of the State of New York, New York County, https://ag.ny.gov/sites/default/file/weinstein_company.pdf.

opportunities.  (*Id*.)   Their meeting was arranged through email, in interstate commerce.  (Id., ¶ 40).  Plaintiff understood their meeting as the key to her future in the entertainment industry, as Harvey Weinstein could wield influence that would make or break her career.  (*Id*., ¶¶ 8 – 11). Plaintiff met with Harvey Weinstein in the bar in the Peninsula Beverly Hills Hotel in November, 2010, for the purpose of procuring significant acting or modelling roles.  (*Id*., ¶¶ 11-12).

During the course of their meeting in the hotel bar, Harvey Weinstein asked Plaintiff to come with him to his room, where they would continue their discussion regarding her career. (*Id*. ¶ 13).  At some point during their communication, Harvey Weinstein offered to secure Plaintiff a role in the popular television program *Project Runway*, which was produced by The Weinstein Company.  (*Id*. ¶ 17).   While Harvey Weinstein was alone with Plaintiff in the hotel room, he excused himself to use the restroom.  When he returned, he was wearing only a bathrobe. (*Id*., ¶ 14).  He first directed Plaintiff to perform a massage on him.  He would not take "no" for an answer; Plaintiff ultimately complied, giving Harvey Weinstein a massage.  (*Id*., ¶ 15).  Harvey Weinstein then requested to perform oral sex on Plaintiff.  He ignored her refusal and again would not take "no" for an answer.  (*Id*., ¶ 16).   Not wanting to relinquish the television role that Harvey Weinstein had promised, Plaintiff relented and Harvey Weinstein completed the sex act:

> 42. Harvey Weinstein knew that he would use fraud, physical force or coercion (as he had done many times before to many other young aspiring actresses) on Plaintiff for a sexual encounter.  He offered her a television role, and demanded sexual contact despite the fact that Plaintiff said "no".
>
> 43. Harvey Weinstein was well aware that a role in one of TWC's projects, or the exercise of his influence on her behalf in the entertainment business, was of significant commercial value to Plaintiff, and Harvey Weinstein used such promise regarding a television project and the prospective use of his influence on her behalf, to recruit and

4

entice Plaintiff to his hotel room where he intended to coerce sex acts.

44. Harvey Weinstein's offer of a role in a television program, and the offer to use his influence on her behalf, was successful in enticing and maintaining Plaintiff in his hotel room. Plaintiff felt compelled to comply with Harvey Weinstein's acts toward her because of the benefits she would receive from his power and influence, including without limitation, a role on *Project Runway*. Harvey Weinstein then coerced Plaintiff into a sexual act. This was a typical practice of Harvey Weinstein, as it was common for him to lure young females into his room with the promise of an attractive role or entertainment project, and then coerce them into a sexual encounter. Harvey Weinstein knew that the promise of a role or the use of his influence on her behalf would entice Plaintiff, and knew that he was in a position to coerce the sexual activity he desired.

45. Harvey Weinstein was able to coerce Plaintiff into sexual activity in his hotel room because of his promise to her of a television role and use of his influence on her behalf.

46. Harvey Weinstein in this case used the ploy of a television role as a fraudulent means of obtaining sexual gratification from Plaintiff.

(*Id*., ¶¶ 42 – 46). As discussed below, these allegations are sufficient to state a plausible claim under the statutory language of 18 U.S.C. § 1591(a).

## Points and Authorities

### I. PLAINTIFF ALLEGES FACTS THAT PLAUSIBLY SUPPORT EACH OF THE ELEMENTS OF A VIOLATION OF 18 U.S.C. § 1591(a)

#### A. Plaintiff Alleges a Plausible Statutory Claim

A motion under Fed.R.Civ.P. 12(b)(6) must be denied unless the complaint "fails to state a claim for relief that is plausible on its face." *Dahlia v. Rodriguez*, 735 F. 3d 1060, 1066 (9th Cir. 2013) (quoting *Bell Atl. Corp. v. Twombley*, 550 U.S. 559, 570 (2007)). In reviewing the complaint for a motion to dismiss, the court "must accept all allegations of the complaint as true and draw all reasonable inferences in favor of the nonmoving party." (*Id*., citation, internal

5

quotation omitted).  The allegations of fact need only pass the threshold to "*plausibly suggest*" that the plaintiff may be entitled to relief:

> First, to be entitled to the presumption of truth, allegations in the complaint … may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively.  Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*Starr v. Bacca*, 152 F. 3d 1202, 1216 (9th Cir. 2011) (emphasis added).  The Amended Complaint in this case satisfies this standard.  It alleges facts, not mere legal conclusions, that support each of the elements of a violation of 18 U.S.C. §1591(a).  Accordingly, Harvey Weinstein's Motion to Dismiss must be denied.

## B.  Plaintiff's Claim Under 18 U.S.C. § 1591(a) Is Supported by the Plain Meaning of the Statute

The Amended Complaint alleges a claim for violation of the Victims of Trafficking and Violence Protection Act (TVPA), 18 U.S.C. § 1591(a).  The TVPA includes an express civil private right of action in 18 U.S.C. § 1595 (providing that "[a]n individual who is a victim of a violation of this chapter [18 U.S.C. §§ 1581 *et seq*.]  may bring a civil action against the perpetrator … in an appropriate district court … and may recover damages and reasonable attorneys fees").  The TVPA contains broad language to address a wide array of circumstances in which a vulnerable population is victimized:  "Congress has made it clear that forced labor and human trafficking also involve 'violations of other laws, including labor and immigration codes and laws against kidnapping, slavery, false imprisonment, assault, battery, pandering, fraud and extortion.'  ***This shows the broad reach of the TVPA and the broad class of individuals whom it protects***."  *Mairi Nunag-Tanedo v. E. Baton Rouge Parish Sch. Bd*., 790 F. Supp. 2d 1134, 1147 (C.D. Cal. 2011) (Guillford, J.) (denying motion to dismiss, noting that the alleged facts, in

which teachers recruited from the Phillipines were threatened with abuse of process, were sufficient for purposes of Rule 12(b)(6) although they were "somewhat less shocking" than the facts plead in other cases) (emphasis added); see also United States v. Jungers, 702 F. 3d 1066, 1070 (8th Cir. 2013) (noting the "expansive language of § 1591," which "criminalizes a broad spectrum of conduct …").

Harvey Weinstein begins his argument by asserting the intent of Congress in enacting the TVPA.  He contends that "Congress did not intend the sex trafficking statute to apply in this case," asserting that the TVPA was not enacted to address "a single, gender-based sexual incident that was not connected to a sex trafficking scheme." (Harvey Weinstein ("HW") Memorandum, p. 6).  According to Harvey Weinstein, the statute does not apply because Harvey did not "lure" Plaintiff to the Peninsula Hotel, but rather they voluntarily arranged to meet there. (Def's Memorandum, p. 6).     Yet, when the statutory language is considered, whether their encounter began voluntarily is beside the point.     Such a limited application of the statute advocated by Harvey Weinstein illustrates the fundamental flaw in his analysis:  It fails to acknowledge basic principles of statutory construction, which require the Court to first consider the plain meaning of the statutory language and apply it to Harvey Weinstein's acts and conduct alleged in the Amended Complaint.

"In construing the provisions of a statute, we first analyze its language to determine whether its meaning is plain." *Feder v. Frank (In re Inkjet Printer Litig.)*, 716 F. 3d 1173, 1180 (9th Cir. 2013).   If the language of the statute is clear, statutory construction generally requires that the Court apply the plain meaning without resort to an inquiry into legislative intent:

> We adhere to the usual maxim that Congress "says in a statute what it means and means in a statute what it says there."  And in going about that, we should usually give words their plain, natural, ordinary and commonly understood meanings. We must then apply

the further principle that "if the language of a statute is clear, we look no further than that language in determining the statute's meaning."  At least, we do so unless "the apparent plain meaning of a statute … leads to 'absurd or impracticable consequences.' "

*United States v. Romo-Romo*, 246 F. 3d 1272, 1274-75 (9th Cir. 2001) (citations omitted); *see also BedRoc Ltd v. United States*, 541 U.S. 176, 183, 124 S. Ct. 1587 (2004) ("our inquiry begins with the statutory text, and ends there as well if the text is unambiguous").

The pertinent statutory language is in relevant part:

> (a)   Whoever knowingly—
>
> (1) in or affecting interstate or foreign commerce … recruits, entices, harbors, transports, provides, obtains, or maintains by any means a person;
> (2) knowing, or, … in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, … .

18 U.S.C. § 1591(a). [2]  Construing the plain meaning of the applicable statutory provisions for this civil claim, 18 U.S.C. §§ 1591, 1595, requires one to note their broad language, *e.g.*, "[w]hoever" (1591(a)); "by any means (1591(a)(1)); "receiving anything of value" (1591(a)(2) and 1595(a));  "any combination of such means" (1591(a)(2)).  Congress's use of such "broad, expansive" language " 'does not lend itself to restrictive interpretation.' " *Noble v. Weinstein*, case no. 1:17-cv-09260-RWS, 2018 U.S. Dist. LEXIS 137235 *14 (S.D.N.Y. Aug. 13, 2018) (quoting *United States v. Jungers*, 702 F. 3d 1066, 1070 (8th Cir. 2013)).   Additionally, the statutes, in providing an express civil remedy for a criminal violation, are remedial in nature, which "requires broad interpretation." *Id.* (citing cases).

---

[2]   The acts and conduct set forth in the Amended Complaint are alleged to have occurred in November, 2010, before the effective date of the 2015 amendment to § 1591(a).   Accordingly, the applicable version of the statute, quoted herein, is that in effect as of December, 2008.  The subsequent amendment does not affect the application of the statute in this case.   *See* discussion *infra* pp. 17-18.

8

Applying the plain language of the statute, the Amended Complaint alleges specific facts sufficient to demonstrate each of the elements of a violation of Section 1591(a), including that Harvey Weinstein:

### 1. *In or affecting interstate commerce, knowingly recruited or enticed Plaintiff.*

Harvey Weinstein is alleged to have engaged in electronic communications in interstate commerce to arrange his meeting with Plaintiff.  (AC, ¶ 40).  He is alleged to have done so intending to induce or entice Plaintiff into a vulnerable situation, promising her a role in an entertainment project, in which he would use means of force, fraud or coercion to obtain from her a sex act.  (*Id*.)    Harvey Weinstein argues that the statute does not apply because Plaintiff intended to meet with Harvey Weinstein in the hotel bar, and then voluntarily went with him to his room to discuss her career.  (HW Memorandum, p. 6).  He contends that her claim is undermined because she was free to leave the bar, and she does not allege that he forced her to continue their meeting in his hotel room.  (*Id*., pp. 6 – 7).  The problem with this argument is that it is unmoored from the statutory language, and attempts to address the acts and conduct of Harvey Weinstein in its isolated parts, without considering how they in their totality demonstrate a plan and scheme  to  entice Plaintiff into a situation where she would be vulnerable to his sex act, through the promise of a role in an entertainment project and means of  force, fraud or coercion.[3]  (*See* AC ¶ 41).    The terms, "recruits, entices …" are "unambiguous and include seemingly harmless conduct." *United States v. Estrada-Tepal*, 57 F. Supp. 3d 164, 169 (E.D.N.Y. 2014).  Harvey Weinstein, by his acts and conduct, knowingly recruited and enticed

---

[3]  Harvey Weinstein further argues that Plaintiff's claim is undermined by her failure to abandon the meeting after verbal sexual harassment by Harvey Weinstein when they were conversing in the hotel bar.  (See HW Memorandum, p. 6, AC ¶ 13).  The notion that her tolerance of such verbal harassment would destroy any inference that Plaintiff was thereafter subjected to means of force, fraud or coercion in the commission of a sex act is spurious, and reflects a disturbing lack of understanding of how the abuse of an imbalance of power may result in a sexual assault.

Plaintiff to his plan and scheme, through their purported business meeting, the ostensible purpose of which was to advance her entertainment career, to the point where he brought her to his hotel room and emerged from the bathroom wearing only a bath robe, demanding from Plaintiff a massage. (*See* AC ¶¶ 14-15).  The factual allegations of the Amended Complaint are thus sufficient to satisfy the plain meaning of the "recruits" and "entices" language of § 1591(a).

>    2.   *Knowing or in reckless disregard of the fact that means of force, fraud or coercion or any combination of such means will be used.*

The knowledge that means of force, fraud or coercion will be used has been construed to mean that the defendant is aware of *a pattern* of conduct in which the use of force, fraud or coercion is predictable:

> What the statute means to describe, and does describe awkwardly, is *a state of mind in which the knower is familiar with a pattern of conduct.*
> …
>
>   The knowledge required of the defendant is such that if things go as he has planned, force, fraud or coercion will be employed to cause his victim to engage in a commercial sex transaction. That required knowledge brings the predictable use of force, fraud, or coercion into the definition of the defendant's crime.

*United States v. Todd*, 627 F.3d 329, 334 (9th Cir. 2010) (emphasis added). Section 1591(e)(2)(B) expressly defines the term "coercion" to include "any scheme, plan or pattern intended to cause a person to believe that failure to perform an act would result in serious harm to or physical restraint against the person."  Where the defendant has used means of force, fraud or coercion before to obtain sex acts, an inference is warranted that he will do so again.  *United States v. Townsend*, 521 Fed. Appx. 904, 907 (11th Cir. 2013) ("[t]he jury could infer from [the defendant's] prior use of force that he intended, and therefore knew, that he would use it to make

[the victims] engage in commercial sex").   The Amended Complaint alleges facts setting forth Harvey Weinstein's *pattern* of using force, fraud or coercion on aspiring female actors as a means to obtain sex acts:  "Harvey Weinstein knew that he would use fraud, physical force or coercion (as he had done many times before to many other young aspiring actresses) on Plaintiff for a sexual encounter.  He offered her a television role [*Project Runway*], and demanded sexual contact despite the fact that Plaintiff said 'no.' "   (AC ¶ 42; *see also* ¶¶ 18 – 21).  Harvey Weinstein used employees of The Weinstein Company to facilitate this pattern and scheme.  (*Id*. ¶ 20).   His acts in violation of the statute were the subject of nondisclosure agreements and confidential settlements over a period of years.  (*Id*. ¶ 21).

Alternatively, the offer to assist Plaintiff in her career and a role in *Project Runway* were an artifice used to obtain the sex act by fraudulent means, as Harvey Weinstein had no intent of following through on his promise.  (AC ¶ 46 ("Harvey Weinstein in this case used the ploy of a television role as a fraudulent means of obtaining sexual gratification from Plaintiff")).   *See United States v. Mickey*, 897 F.3d 1173, 1182 (9th Cir. 2018) (noting that allegation of use "force, threats of force, fraud, and coercion are compatible with one another," and as a result they are alternative possible means of committing the offense).   The facts plead in the Amended Complaint are thus sufficient to satisfy the plausibility standard.[4]

---

[4]     Shortly after the Amended Complaint was filed by Plaintiff, the Office of the New York Attorney General filed its action against Harvey Weinstein, which contains extensive details regarding the pattern of conduct by Harvey Weinstein leading to his sexual assaultive behaviors. *See* note 1, *supra*.     In the event that the Court were to conclude that additional facts are necessary regarding Harvey Weinstein's pattern of conduct to allege a plausible claim of coercion under the statute, Plaintiff requests leave to amend to include such allegations. *See infra* pp. 19-20.

### 3.  To cause Plaintiff to engage in a commercial sex act.

Harvey Weinstein argues that the misconduct alleged in the Complaint is not a "commercial sex act."  The term "commercial sex act" is expressly defined in the statute as follows:

> The term "commercial sex act" means any sex act, on account of which anything of value is given to or received by any person.

18 U.S.C. § 1591(e)(3).  Harvey Weinstein also contends that the "commercial sex act" element is not satisfied because "the transaction must be *economic* in nature."[5] (HW Memorandum, p. 8) (emphasis in original).  He argues that the claim fails because "there are no allegations of a quid pro quo between [Harvey] Weinstein and Plaintiff whereby anything of value was given or received by either party for sex." (*Id*. at 10).   This argument is belied by the allegations of the Amended Complaint.  The statute's plain terms encompass any sex act "*on account of which anything of value* is given to or received by any person."   18 U.S.C. § 1591(e)(3) (emphasis added).     There can be no question that the promise of a television role, involving an entertainment mogul's wielding of his significant influence, is a thing of enormous value, particularly to an aspiring actress.  The Amended Complaint alleges a particular quid pro quo

---

[5]     Harvey Weinstein relies upon *United States v. Campbell*, 111 F. Supp. 3d 340 (W.D.N.Y. 2015), and *United States v. Reed*, no. 15-188 (APM), 2017 LEXIS 118020 (D.D.C. July 27, 2017), which are inapposite. (See HW Memorandum, pp. 8-9).  In *Campbell*, the Court held that § 1591(a) was a valid exercise of Congress's power under the commerce clause.  *Id*. at 342.  In considering whether § 1591(a) regulates activity that has a substantial effect on interstate commerce; the Court addressed four factors, first making the observation that" commercial sex acts are economic in nature."  *Id*. at 345 (citation, internal quotation omitted); see also *Reed*, *supra* at *34 (applying commerce clause analysis to 18 U.S.C. § 2423).    The Court did not, in so noting, intend to modify or limit the language, "anything of value," in § 1591(e)(3).  Harvey Weinstein argues that the statute should be restricted to the "commodities" of prostitution or pornography, which, as discussed above, must be rejected under a plain meaning analysis. Rather, "anything of value" means what it says, and necessarily encompasses the exchange for a sex act being reflected in an item of particular and unique value to a small subset of the population, aspiring actresses and models.

promised by Harvey Weinstein, in the form of a role in the popular television series *Project Runway*:   "Plaintiff felt compelled to comply with Harvey Weinstein's acts toward her because of the benefits she would receive from his power and influence, including without limitation, a role in *Project Runway*."  (AC ¶ 44).   This role was promised by Harvey Weinstein to Plaintiff on account of the sex act, as it was the concerted plan of scheme of Harvey Weinstein to offer this thing of great value to an aspiring actress for the purpose of engaging her in sexual activity. (AC ¶¶ 17, 43 - 45).  Harvey Weinstein's argument that the Amended Complaint does not allege the offer of a television role in exchange for sex (HW Memorandum, p. 10) ignores these allegations.   The Amended Complaint sufficiently alleges a quid pro quo.

Harvey Weinstein's argument relies upon *Kolbek v. Twenty First Century Holiness Tabernacle Church, Inc.*, no. 10-cv-4124, 2013 U.S. Dist. LEXIS 180463 (W.D. Ark. December 24, 2013), which is inapposite.  There, the minor plaintiffs alleged that they were required to become "spiritual wives" of a religious cult leader, and were subjected to frequent sexual abuse by him on out-of-state trips.  *Id.* at *9.  For purposes of the "commercial sex act" element, the plaintiffs alleged that their "living expenses were paid for with money provided by the ministry's businesses."  *Id.* The Court granted summary judgment on the plaintiffs' claims under §§ 1591 and 1595, holding that "[p]laintiffs offer no evidence of a causal relationship between the sex acts and the payment of expenses."  Id. at *54.  In so holding, the Court distinguished the Ninth Circuit's decision in *Ditullio v. Boehm*, 662 F.3d 1091, 1095 (9th Cir. 2011).  In *Ditullio*, the defendant gave the plaintiff "crack cocaine on a daily basis so that [the defendant] could have his way with her at any given time ...." *Id*. at *54 n. 16.   The facts alleged in the Amended Complaint here are analogous to those in *Ditullio*, and are distinguishable from those in *Kolbek*. As in *Ditullio*, Harvey Weinstein offered and promised things of value he was in a position to

provide to his victims to obtain sex acts, including the  role in *Project Runway* he promised to Plaintiff. In *Kolbek*, in contrast, the Court found that the payment of the victims' living expenses was not causally related to the sex acts, as the record demonstrated that they were not paid "as some sort of *quid pro quo* for the sex acts that occurred with the [cult leader]."[6]  *Id.* at *54.

Defendant seems to argue that something akin to a formal contract or exchange is necessary to satisfy the "on account of" language of § 1591(e)(3).    Such a restrictive reading of the statute would be inconsistent with the statutory language and the expansiveness with which the statute is to be applied.  *See* discussion *supra* pp. 5-6.   The statutory language  "provides no basis for limiting the sex acts at issue to those in which payment was made for the acts themselves[.]"*United States v. Marcus*, 487 F. Supp. 2d 289, 306-07 (E.D.N.Y. 2007).  *See also United States v. Jungers*, 702 F.3d 1066, 1072-75 (8th Cir. 2013) (holding that the "expansive language of § 1591" encompasses the purchaser of a commercial sex act as well as the supplier). The Court further notes that "there merely needs to be a causal relationship between the sex act and an exchange of an item for value."  *Id.*  Such a causal relationship in this case between the promised television role and use of influence, on the one hand, and the sex act on the other, is alleged in sufficient detail in the Amended Complaint.  (AC, ¶¶ 8, 17, 43-45).

### C.  The District Court in *Noble v. Weinstein* Denied Substantially the Same Motion to Dismiss

Kadian Noble, another aspiring actress victimized in Harvey Weinstein's predatory sex scheme,  filed her claim against Harvey Weinstein  in the U.S. District Court for the Southern District of New York, also seeking a civil remedy under the TVPA, 18 U.S.C. §§ 1591, 1595.

---

[6]   *Kolbek* is also inapposite because it was decided on summary judgment, based on a full record, not on a motion to dismiss.  *Id.*  The issue under § 1591(e)(3) of whether anything of value was provided on account of a sex act is one of fact not generally susceptible to disposition on a motion to dismiss, and here the Amended Complaint alleges sufficient facts supporting this element.

Harvey Weinstein moved to dismiss making substantially the same arguments as here.  The district court denied his motion to dismiss in a written opinion dated August 13, 2018.  *Noble v. Weinstein*, case no. 1:17-cv-09260-RWS, 2018 U.S. Dist. LEXIS 137235 *14 (S.D.N.Y. Aug. 13, 2018).

The Court in *Noble* first notes that "[t]he alleged predatory sexual conduct of Harvey Weinstein has been the subject of extensive publicity, investigations, and litigation," citing multiple cases and press articles.  *Id*. at *1.  The Court recognized that the case before it was "the first instance seeking to apply the TVPA to an incident such as the one alleged by the Plaintiff." *Id*.

In its analysis, the Court rejects the same statutory intent argument made by Harvey Weinstein here.  In particular, the Court counters the assertion that the types of acts that courts have found to violate the TVPA are different from Harvey's alleged acts by noting that "other courts have applied Section 1591 to defendants who have lured women, under false pretenses and with lucrative promises, for sexual purposes."  *Id*. at *14 (citing as examples *Lawson v. Rubin*, 2018 WL 2012869 *15 (E.D.N.Y. April 29, 2018) and *United States v. Thompson*, 864 F.3d 840-41 (7th Cir. 2017)).[7]   The Court declined Harvey Weinstein's invitation to construe the statute narrowly, noting that "[w]here, as here, a broad statute has a plain and unambiguous meaning, it ought to be interpreted broadly." *Noble* at *15.

The Court's analysis addressed each element in the statutory language, in the same manner as set forth above.  It first considered the Merriam-Webster dictionary definition of the word "entice" in examining the statute's plain meaning, in conjunction with  allegations in the

---

[7]    In *Thompson*, the Court sustained a guilty plea and conviction where the defendant enticed the victim to enter his vehicle on the promise of helping her attain modeling work; the subsequent sex act was obtained by means of fraud as the modelling work "was never in the cards." *Id.* at 840-41.

amended complaint in that case that Harvey Weinstein initiated a professional relationship with the plaintiff and then made promises to her of a film role and a meeting at a modeling agency. *Id.* at *16.  "What proved to be empty promises of a film role and a modeling meeting were more than enough to arouse 'hope and desire' in Noble, an aspiring actress and model."  *Id.* at *17 (quoting from dictionary definition of "entice").    The same arousing of "hope and desire" is alleged in the Amended Complaint here, especially concerning the promised role in *Project Runway*.

The Court then analyzes the element requiring means of force, fraud or coercion.  *Id.* at *18.    It refers to the Ninth Circuit's decision in *United States v. Todd*, focusing on the defendant's "pattern of behavior."   *Id.*; 627 F. 3d at 333-34.  The Court finds that "[h]ere, the pattern of behavior included in the Amended Complaint plausibly alleges a knowledge and understanding that, from the start of their professional relationship  … Harvey would use fraudulent means to entice Noble to engage in a sex act with him." *Id.* at *19.     "[W]hen read as a whole," the allegations plausibly meet the "means of fraud" pattern.   *Id.* at *20. Additionally, the pleading in that case alleged physical conduct by Harvey Weinstein in his hotel room encounter with Noble that was sufficient to demonstrate a "means of force" pattern.   *Id.* Here, likewise, a pattern is alleged, consistent with the allegations against Harvey Weinstein generally, including those of Ms. Noble, that he arranged and conducted a business meeting with Plaintiff at the Peninsula Hotel under a pretext, intending to engage her in a sex act in his hotel room using the promise of a television role and means of force, fraud or coercion.  He initiated sexual contact on Plaintiff without her consent, as Plaintiff froze during their encounter. (AC ¶ 16).  As in *Noble*, these allegations are sufficient to demonstrate Harvey's knowledge that means of force, fraud or coercion will be used.

The *Noble* Court next finds that the allegations in that case plausibly set forth a basis for causation to the alleged sex act. *Id*.at *21.    The question posed "is whether the prohibited means of fraud and force were 'used to cause,' or designed to bring about, the sex act." *Id*.   The inference that they satisfy this element were found to be plausible: "Harvey's allegedly false statements to [Ms. Noble] were material and they were reasonably relied upon to Noble's detriment."   *Id*. at *24.   Here, the Amended Complaint similarly alleges that the purpose of Harvey's business meeting with Plaintiff was to further her career, provide her with future television or film roles, and grant her introductions and access to key executives and agents who would place her on the course of a successful and lucrative career.   Plaintiff reasonably believed that the promises Harvey made to her were well within his considerable power and influence in The Weinstein Company and the entertainment industry.   (*See* AC ¶¶ 11-12).    These promises included a tangible role in *Project Runway*.    (*Id.*, ¶ 17).    As in *Noble*, Plaintiff reasonably relied on the premise that their business meeting was in good faith, and on Harvey's promises, to her detriment.

Finally, the Court in *Noble* rejects Harvey Weinstein's argument that the "commercial" component of the term "commercial sex act" in the statute should be construed narrowly and limited to "economic commerce." *Id*. at *26.    It holds that the statutory language "anything of value" is expansive and "requires a liberal reading," citing cases in which that term is used to include intangibles.  *Id*.; *see United States v. Maneri*, 353 F. 3d 165, 168 (2d Cir. 2003); *United States v. Cook*, 782 F. 3d 983, 989 (8th Cir. 2015); *United States v. Rivera*, case no. 12-cr-121, 2012 U.S. Dist. LEXIS 178770 *14 (M.D. Fla. Dec. 18, 2012) (where sex act was exchanged for promise of "ordination as a prophet," the Court applied the plain meaning of term "anything of value," holding that it did not need to be a "tangible thing of monetary value," and could be

ordination in the parties' ministry "because it is an honor, it allows one to be close to God, and it allows one to share God's words with others").[8]   The Court in *Noble* recognized the substantial value offered by Harvey Weinstein to an aspiring actress:

> For an aspiring actress, meeting a world-renowned film producer carries value, in and of itself.  The opportunity, moreover, for the actress to sit down with that producer in a private meeting to review her film reel and discuss a promised film role carries value that is career-making and life-changing.

*Id*.

The *Noble* decision is well reasoned and cannot be fairly distinguished from the instant case.  Harvey Weinstein's Motion to Dismiss should be denied accordingly.

## II.   HARVEY WEINSTEIN'S ALLEGED ACTS VIOLATE THE VERSION OF 18 U.S.C. § 1591 IN EFFECT IN 2010

Harvey Weinstein argues that his alleged acts did not violate the version of 18 U.S.C. § 1591(a) in effect in 2010 when the incident in the Peninsula Hotel occurred.   Section 1591(a) was amended in 2015 to supplement the terms "recruits, entices," etc.  This amendment served to codify the Eighth Circuit's decision in *United States v. Jungers*, 702 F.3d 1066 (8th Cir. 2013), which held that the broad terms of the statute encompassed a claim against the "john" purchasing a sex act.   In any event, as the Court noted in *Noble*, the pre-2015 version of the statute, particularly its "recruits, entices …" language, encompasses the acts and conduct alleged against

---

[8]   The phrase "anything of value" is also used in the bribery statute, 18 U.S.C. § 666(a)(1)(b), and is construed broadly:  "The plain language of the statute does not require a restricted, technical interpretation that would prevent the consideration of the 'thing's' value to other parties with an immediate interest in the transaction."  *United States v. Hines*, 541 F. 3d 833, 837 (8th Cir. 2008).   *Accord United States v. Marmolejo*, 89 F. 3d 1185, 1191 (5th Cir. 1996) (holding that "anything of value" encompasses intangible benefits, including conjugal visits); *United States v. Zimmerman*, 509 F. 3d 920, 927 (8th Cir. 2007) (holding that "anything of value" includes the benefits from a rezoning application).

Harvey Weinstein.   *Noble* at *1, n. 1 (the pre-2015 version of § 1591(a)  "does not change the substance of the statute as applied to [Harvey Weinstein]"); *accord United States v. Afyare*, 632 Fed. Appx. 272, 275 n. 1 (6th Cir. 2016) ("the amended language does not change the substance of the statute as pertinent here").   In asserting application of the 2010 version of the statute, which Plaintiff does not dispute, Harvey Weinstein again argues that "Plaintiff did not engage in sexual activity with Weinstein on condition of a role   in a television show or under threat of force." (HW Memorandum, p.13).   This assertion simply ignores the pertinent allegations of the Amended Complaint, which state facts to the contrary.   (*See* AC ¶ 42 ("Harvey Weinstein knew that he would use fraud, physical force or coercion (as he had done many times before to many other aspiring actresses) on Plaintiff for a sexual encounter[:] [h]e offered her a television role, and demanded sexual contact despite the fact that Plaintiff said 'no' ")); *see also id*. ¶ 45 ("Harvey Weinstein was able to coerce Plaintiff into sexual activity in his hotel room because of his promise to her of a television role and use of his influence on her behalf")).

### III.   IF THIS COURT WERE TO DETERMINE THAT MORE FACTS NEED TO BE ALLEGED TO SATISFY THE PLAUSIBILITY STANDARD, PLAINTIFF REQUESTS LEAVE TO AMEND

As set forth above, the Amended Complaint sets forth sufficient allegations of fact for a plausible claim under 18 U.S.C. §§ 1591, 1595.   If this Court, however, were to determine that more facts  need to be alleged for purposes of the plausibility standard, Plaintiff requests leave to amend to plead such facts.   "Where a Rule 12(b)(6) motion to dismiss is granted, 'a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possible be cured by the allegation of other facts.' " *Ovation Toys Co. v. Only Hearts Club*, 675 Fed. Appx. 721, 724 (9th Cir. 2017) (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc)); *accord Knevelbaard v. Kraft Foods, Inc.*,

232 F.3d 979, 983 (9th Cir. 2000) ("[a]n order granting [a Rule 12(b)(6)] motion must be accompanied by leave to amend unless amendment would be futile").

In this case, Plaintiff first alleged her claim against Harvey Weinstein under the TVPA in the Amended Complaint filed in state court, prior to removal, on or about January 30, 2018.  This was before the Office of the New York Attorney General filed its complaint against Harvey Weinstein, which contained extensive allegations of facts pertinent to Harvey Weinstein's acts and conduct with third party female actors, obtained by the Office of Attorney General in its investigation of Harvey Weinstein and The Weinstein Company.  (*See* note 1, *supra*).  Given these circumstances, in which the Plaintiff has not had an opportunity as of right to amend allegations of fact relevant to the TVPA claim, in the event that the motion to dismiss were granted then leave to amend would be appropriate.

## Conclusion

The Amended Complaint alleges facts demonstrating each of the elements of a violation of 18 U.S.C. § 1591(a) by Defendant Harvey Weinstein, satisfying the plausibility standard. Harvey Weinstein's Motion to Dismiss should accordingly be denied.


Dated:  October 3, 2018                              HERMAN LAW


                                                     __*/s/* Daniel Ellis_____
                                                     Daniel G. Ellis
                                                     Attorneys for Plaintiff

20

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**<u>PROOF OF SERVICE</u>**

**STATE OF FLORIDA, COUNTY OF PALM BEACH**

      I am over the age of 18 and not a party to the within entitled action.  I am employed at the Herman Law Firm, Boca Center Tower I, 5200 Town Center Circle, Suite 540, Boca Raton, Florida 33486.

      On **October 3, 2018** I served the foregoing document(s) described as Plaintiff's memorandum of points and authorities in opposition to Harvey Weinstein's Motion to Dismiss on the following parties of this action:

Phyllis Kupferstein
**Kupferstein Manuel LLP**
pk@kupfersteinmanuel.com
*Attorneys for Defendant*
*Harvey Weinstein*

[ **X** ]   **BY MAIL:**  I caused true and correct copies of the above documents to be placed and sealed in an envelope (or envelopes) addressed to the addressee(s) with postage thereon fully prepaid, and I further caused said envelope(s) to be placed in the United States mail, in the City and County of Boca Raton, Palm Beach County.

[     ]   BY PERSONAL SERVICE:  I caused true and correct copies of the above documents to be placed and sealed in an envelope (or envelopes) addressed to the addressee(s) and I caused such envelope(s) to be delivered by hand on the office(s) of the addressee(s).

[     ]   **BY FACSIMILE:**  I caused a copy (or copies) of such document(s) to be sent via facsimile transmission from (305) 931-0877 to the office(s) of the address(s).

[     ]   BY E-MAIL OR ELECTRONIC TRANSMISSION:  With agreement of defense counsel that service by email instead of personal delivery constitutes proper service today, I caused a copy (or copies) of such document(s) to be sent via email to the addressee(s).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed on **October 3, 2018**, at Boca Raton, Florida.

                                      _/s/_ Daniel Ellis
                                      **Daniel G. Ellis, Esq.**